<u>**NOT FOR PUBLICATION**</u>

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ASHLEY GEORGES,<br><br>        Plaintiff,<br><br>    v.<br><br>K FIOIRE, *et al.*,<br><br>        Defendants. | No. 20cv13561 (EP) (JBC)<br><br>**OPINION** |

**PADIN, District Judge.**

*Pro se* Plaintiff Ashley Georges, a state prisoner in South Woods State Prison, New Jersey, is proceeding on a second amended complaint ("SAC") against various defendants for alleged interference with his right to access the courts during his post-conviction relief ("PCR") proceedings in state court and related petition for writ of habeas corpus under 28 U.S.C. § 2254 in federal court. D.E. 11. Because Plaintiff has been granted *in forma pauperis* ("IFP") status, the Court must review the SAC to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915(e)(2).

For the reasons below, the Court will **DISMISS** the SAC without prejudice. Plaintiff will have one final opportunity to submit a complaint that can pass the Court's § 1915 review.

**I.     BACKGROUND**

Plaintiff filed his original complaint on September 29, 2020, D.E. 1, and an amended complaint on October 7, 2020, D.E. 2. On January 13, 2021, the Honorable Claire C. Cecchi, D.N.J., administratively terminated the amended complaint because Plaintiff had not paid the filing fee or submitted an IFP application. D.E. 3. Plaintiff submitted an IFP application, which Judge

Cecchi granted on October 20, 2021.  D.E. 8.  Judge Cecchi also dismissed the amended complaint without prejudice for failure to state a claim under 28 U.S.C. § 1915.  *Id.*  Plaintiff was permitted to file a second amended complaint, which he did on March 21, 2022.[1]

The SAC alleges Defendants Office of the Public Defender ("OPD"), Susan Bohrod, Helen Godby, Joan Buckley, the New Jersey Supreme Court ("NJSC"), Essex County Prosecutor's Office ("ECPO"), Special District Attorneys General Thomas McTigue and Barbara Rosenkrans, ECPO Custodian of Records Stephen Pogany, New Jersey Department of Corrections ("NJDOC"), East Jersey State Prison ("EJSP") Law Librarians Rick Liss and Christian Porroveechio, EJSP Administrator James Slaughter, EJPS Superintendent Calvin Spires, and NJDOC Associate Administrator Cindy Sweeney caused his § 2254 petition to be dismissed as untimely and otherwise interfered with his access to the courts.

## II.   LEGAL STANDARDS

To survive a *sua sponte* screening for failure to state a claim, the complaint must allege "sufficient factual matter" to show that the Plaintiff's claims are facially plausible.  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  "'A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  "[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"  *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

---

[1] The matter was reassigned to the undersigned on June 28, 2022.  D.E. 12.

In determining a *pro se* complaint's sufficiency, courts must construe it liberally in favor of the plaintiff. *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *United States v. Day*, 969 F.2d 39, 42 (3d Cir. 1992). Courts must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).

### III.   ANALYSIS

#### A.   State Agencies

Plaintiff alleges that several state agency Defendants interfered with his right to access the courts: the OPD, the NJDOC, the NJSC and the ECPO. The Eleventh Amendment immunizes these Defendants from suit.

"The Eleventh Amendment 'is a jurisdictional bar which deprives federal courts of subject matter jurisdiction' over actions against a State." *Grohs v. Yatauro*, 984 F. Supp. 2d 273, 280 (D.N.J. 2013) (citing *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 693 n.2 (3d Cir. 1996)); *see also* U.S. CONST. amend. XI. Plaintiffs may not bring a suit against a state in federal court unless Congress has expressly abrogated its sovereign immunity or the state consents to being sued in federal court. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 66 (1989). Congress did not expressly abrogate sovereign immunity when it passed § 1983, *see id.*, and there is no indication that New Jersey has consented to be sued. "The state's immunity from suit also extends to 'arms' of the state, such as agencies or departments." *Grohs*, 984 F. Supp. 2d at 280.

Plaintiff concedes the OPD is a state agency. SAC ¶ 4. The NJDOC and NJSC are likewise state agencies, entitled to Eleventh Amendment immunity. *See Dongon v. Banar*, 363 F. App'x 153, 156, (3d Cir. 2010) (per curiam) ("[T]he state courts, its employees, and the judges are entitled to immunity under the Eleventh Amendment because they are part of the judicial branch of the

3

state of New Jersey, and therefore considered 'arms' of the state."); *Brady v. Jersey Judiciary*, No. 21-07895, 2023 WL 3145333, at *3 (D.N.J. Apr. 28, 2023) ("For purposes of the Eleventh Amendment, the State Judiciary is an arm of the state."); *Grabow v. S. State Corr. Facility*, 726 F. Supp. 537, 538 (D.N.J. 1989) ("[T]o the extent that a defendant is entitled to eleventh amendment immunity, the defendant is not a person within the meaning of § 1983."). Therefore, the Eleventh Amendment bars any damages claim against these Defendants.

Plaintiff likewise alleges a "long standing [ECPO] policy of refusing to provide defendants discovery materials in efforts of deliberately and maliciously prosecute [sic] defendants with disregard of th[e] *Brady*[2] rule." SAC ¶ 53. He further alleges "a custom or practice of supporting employees in fabricating and distorting evidence to obtain a conviction by any means necessary." *Id.* ¶ 54. ECPO has "withheld documents that would expose the unethical practices of investigators and detectives' illegal tactics that encourages the use of misconduct to obtain evidence to secure convictions." *Id.* ¶ 55.

"When [New Jersey] county prosecutors engage in classic law enforcement and investigative functions, they act as officers of the State." *Coleman v. Kaye*, 87 F.3d 1491, 1505 (3d Cir. 1996). Plaintiff's claims against the ECPO are based on its actions during the investigation and prosecution of criminal charges. Because these fall within the "classic law enforcement and investigative functions," the ECPO is entitled to share in the State's Eleventh Amendment immunity. *See Woodyard v. Cnty. of Essex*, 514 F. App'x 177, 182 (3d Cir. 2013) ("[T]he ECPO, to the extent that it is a governmental entity which can be sued under § 1983, is entitled to Eleventh Amendment immunity."); *Briggs v. Moore*, 251 F. App'x 77, 79 (3d Cir. 2007) ("[T]he Monmouth County Prosecutor's Office is not a separate entity that can be sued under § 1983."); *Reitz v. County*

---

[2] *Brady v. Maryland*, 373 U.S. 83 (1963).

*of Bucks*, 125 F.3d 139, 148 (3d Cir. 1997) (county district attorney's office not entity for purposes of § 1983 liability).

Plaintiff also seeks injunctive relief from the state agencies. A plaintiff may file "suits against state officials that seek prospective relief to end an ongoing violation of federal law." *Christ the King Manor, Inc. v. Sec'y U.S. Dep't of Health & Hum. Servs.*, 730 F.3d 291, 318 (3d Cir. 2013) (citing *Ex parte Young*, 209 U.S. 123 (1908)); *Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess*, 297 F.3d 310, 323 (3d Cir. 2002)). However, *Ex parte Young* "has no application in suits against the States and their agencies, which are barred regardless of the relief sought . . . ." *Puerto Rico Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 146 (1993). Accordingly, all of Plaintiff's claims against the state agencies will be dismissed with prejudice. 28 U.S.C. § 1915(e)(2)(B)(iii).

### B. Susan Bohrod and Joan Buckley

Defendant Susan Bohrod was an OPD pool attorney who represented Plaintiff during his PCR proceedings from July 2006 to August 28, 2007. SAC ¶¶ 5, 36. "Defendant Bohrod's responsibility was to obtain the necessary discovery materials, certification and affidavits that were essential to Plaintiff meeting the requirements of a prima facie showing . . . ." *Id.* ¶ 36. Bohrod "was aware that Plaintiff had alibi witnesses that trial counsel failed to call and waived a [*United States v. Wade*, 388 U.S. 218 (U.S. 1967)] hearing Plaintiff requested . . . without Plaintiff's consent" but "failed to do any investigations to support any of Plaintiff's claims." *Id.* ¶¶ 38-39. Plaintiff wrote "numerous letters to Defendant Bohrod's supervisor complaining about her blatant disregard of Plaintiff's PCR proceeding. After being reprimanded by her supervisor, Bohrod obtained a defective certification from . . . one of Plaintiff's alibi witnesses and failed to secure a"

5

different certification. *Id.* ¶ 40.  According to Plaintiff, "Defendant Bohrod's [sic] deliberately sabotages Plaintiff's PCR because he complained to her supervisor." *Id.* ¶ 41.

Joan Buckley represented Plaintiff during "his PCR appeal from December 2008 to November 16, 2010.  Defendant Buckley presented an argument for a remand to conduct an evidentiary hearing." *Id.* ¶ 43.  Plaintiff alleges Buckley "failed to include Plaintiff's certification with her argument that ultimately led to the denial of his appeal." *Id.* ¶ 44.  "Because Defendant Buckley failed to include Plaintiff's certification with her argument, his burden establishing a prima facie showing that his trial counsel was ineffective was lost." *Id.* ¶ 45.  Further, Buckley "intentionally refused to file Plaintiff's [motion for] reconsideration and instead filed a petition for certification foreclosing any possibility that Plaintiff could have to seek a reconsideration . . . ." *Id.* ¶ 47.

To state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  *See Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).  However, "public defenders are not state actors under § 1983 when they 'perform[ ] a lawyer's traditional functions as counsel to a defendant in a criminal proceeding.'"  *Rambert v. Dist. Att'y Philadelphia*, No. 20-1593, 2022 WL 205416, at *1 (3d Cir. Jan. 24, 2022) (alteration in original) (quoting *Polk County v. Dodson*, 454 U.S. 312, 325 (1981)).  This includes public defenders and attorneys who, like Bohrod and Buckley, are appointed to represent prisoners during PCR proceedings.  *See Albrecht v. Hamilton*, 233 F. App'x 122, 124 (3d Cir. 2007) (per curiam).  Accordingly, Plaintiff's claims against them will be dismissed with prejudice for failure to state a claim.  28 U.S.C. § 1915(e)(2)(B)(ii).

**C.     Helen Godby**

Helen Godby is an OPD Intake Unit employee. SAC ¶ 6.[3] Plaintiff alleges Godby "deliberately wrote Plaintiff a misleading letter dated October 31, 2007, that led him to believe that his appeal was filed. Defendant Godby participated in the defective filing mechanism utilized to sabotage indigent defendants one-year statute of limitations period that denied Plaintiff access to the court." *Id.* ¶ 45. "Defendant Godby's deliberate actions contributed to the Plaintiff's lost opportunities to have the District Court conduct a motion for discovery and an evidentiary hearing to develop a record for the grounds raised in Plaintiff's habeas petition." *Id.* ¶ 46.

The Court takes judicial notice of Godby's October 31, 2007 letter as filed on the public docket of Plaintiff's § 2254 proceedings, *Georges*, No. 10cv6300, D.E. 55-1 at 12. *See* Fed. R. Evid. 201(b)(2) ("The court may judicially notice a fact that is not subject to reasonable dispute because it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned."); *Conway v. Oliver*, 429 F.2d 1307, 1308 (9th Cir. 1970) (A "district court may consider its own records for the purpose of determining whether an action brought [IFP] must be dismissed, despite the papers being regular on their face, because the action is in fact frivolous or malicious."). In addition, the SAC explicitly relies upon the letter. *See In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999) (noting a court can consider a document integral to or explicitly relied upon in the complaint as part of a motion to dismiss).

---

[3] The letter identified Godby as an Assistant Deputy Public Defender. *Georges*, No. 10cv6300, D.E. 55-1 at 12. It is not clear that writing the letter constitutes performing the traditional duties of counsel as opposed to being an administrative duty. Therefore, the Court will presume Godby is a state actor for screening purposes only.

7

The letter reads, in relevant part:

> We have received your recent request for an appeal of your August 28, 2007, denial of your petition for Post Conviction Relief . . . . The Intake Unit has opened a file and we are in the process of gathering all the necessary documents. Thereafter, your file will be assigned to an Appellate Attorney. This process may take several months.

*Georges*, No. 10cv6300, D.E. 55-1 at 12. The Court must give Plaintiff the benefit of all reasonable inferences during screening, but the letter cannot be reasonably interpreted as a statement that an appeal had already been filed on Plaintiff's behalf. *See also Georges v. Bartkowski*, No. 10-6300, 2019 WL 3986059, at *3 (D.N.J. Aug. 22, 2019) ("The documents Petitioner himself submitted show that he was directly informed by the public defender's office in late October 2007, after the forty-five (45) days had already expired, that if he left the filing of the notice up to an appellate attorney in the public defender's office, his notice would likely not be filed for 'several months.'"). Because Plaintiff has not plausibly alleged that Godby's letter caused his § 2254 petition's dismissal, the Court will dismiss this claim without prejudice.

        **D.**    **Thomas McTigue**

Thomas McTigue is a Special Deputy Attorney General employed by the ECPO. SAC ¶¶ 10, 56. Plaintiff alleges McTigue "spearheaded the pretrial investigation that intentionally and maliciously produced fabricated and distorted evidence to present a [narrative] of a drug turf and/or retaliation murder." *Id.* ¶ 56. "This evidence was unsupported by any direct evidence other than Defendant McTigue's opening arguments. However, Defendant McTigue was crafty in constructing false evidence and concealed exculpatory from the defense." *Id.* McTigue also "deliberately manipulated existing circumstantial evidence to maliciously prosecute Plaintiff for the murder of Kevin Jackson" and "willfully committed perjury when he attempted to manipulate the trial testimony of the victim's brother . . . ." *Id.* ¶ 57.

8

Plaintiff's claims against McTigue are barred in part by prosecutorial immunity. Prosecutorial immunity applies to "work 'intimately associated with the judicial phase of the criminal process.'" *Fogle v. Sokol*, 957 F.3d 148, 160 (3d Cir. 2020) (quoting *Burns v. Reed*, 500 U.S. 478, 486 (1991)). "[P]rosecutors are immune from claims arising from their conduct in beginning a prosecution, including soliciting false testimony from witnesses in grand jury proceedings and probable cause hearings, presenting a state's case at trial, and appearing before a judge to present evidence." *Id.* (cleaned up) (citing *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976); *Burns*, 500 U.S. at 491-92; *Kulwicki v. Dawson*, 969 F.2d 1454, 1465 (3d Cir. 1992)). Accordingly, McTigue has absolute immunity to Plaintiff's claims based on McTigue's presentations during the *Miranda* hearing and trial. Plaintiff's allegations of withholding exculpatory evidence are also barred, as is any malicious prosecution claim. *See Yarris v. Cnty. of Del.*, 465 F.3d 129, 137 (3d Cir. 2006) ("It is well settled that prosecutors are entitled to absolute immunity from claims based on their failure to disclose exculpatory evidence, so long as they did so while functioning in their prosecutorial capacity."); *Kulwicki*, 969 F.2d at 1463 ("The decision to initiate a prosecution is at the core of a prosecutor's judicial role.").

However, absolute immunity does not attach to a prosecutor's "administrative or investigatory actions unrelated to initiating and conducting judicial proceedings." *Odd v. Malone*, 538 F.3d 202, 208 (3d Cir. 2008). Plaintiff's claim about McTigue's participation in the pretrial investigation and creation of fabricated evidence may fall within this exception. SAC ¶ 56. The Court will not dismiss these claims based on prosecutorial immunity, but it will dismiss the claims as barred by *Heck v. Humphrey*, 512 U.S. 477 (1994). A plaintiff may not recover damages for "harm caused by actions whose unlawfulness would render a conviction or sentence invalid" unless that conviction has been reversed or otherwise called into question. *Id.* at 486-87. "Thus,

when a state prisoner seeks damages in a § 1983 suit, courts must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 487.

To sufficiently state a claim based on the fabrication of evidence, Plaintiff must set forth enough facts for the Court to plausibly infer that "there is a reasonable likelihood that, without the use of that evidence, the defendant would not have been convicted." *Halsey v. Pfeiffer*, 750 F.3d 273, 294 (3d Cir. 2014). "[F]abrication claims must draw a meaningful connection between [plaintiffs'] conviction and the use of fabricated evidence against them." *Id.* at 294 n.19. If Plaintiff succeeded on this claim, it would call his conviction's validity into question. Therefore, this claim is currently barred by *Heck*. The Court will dismiss this claim without prejudice.

### E.     Barbara Rosenkrans

Barbara Rosenkrans "is a Special Deputy Attorney General, employed by the Defendant ECPO. Defendant Rosenkrans represented Defendant ECPO during all of the subsequent PCR proceedings and during the habeas proceedings before the District Court against the Plaintiff." SAC ¶ 61. Rosenkrans "deliberately and maliciously participated in the custom of the distortion and manipulation of testimonial evidence to sustain Plaintiff's conviction." *Id.* ¶ 62. She "willfully refused to turn over withheld evidence preventing Plaintiff from advancing his PCR claims" and "denied all requests of documents that would advance a Miranda violation, Due process violation by admitting suggestive identification evidence, Due process violation of prosecutorial misconduct for presenting knowingly false testimony, etc." *Id.* ¶¶ 62-63.

Rosenkrans is entitled to prosecutorial immunity for actions representing the State in Plaintiff's PCR proceedings. "[C]ourts have held that prosecutors are entitled to immunity even

when they withhold evidence after trial while the criminal conviction is on appeal." *Yarris*, 465 F.3d at 137; *see also Parkinson v. Cozzolino*, 238 F.3d 145, 152 (2d Cir. 2001) (explaining that "absolute immunity covers prosecutors' actions after the date of conviction while a direct appeal is pending"); *Carter v. Burch*, 34 F.3d 257, 263 (4th Cir. 1994) ("In these post-trial motions and preparations for appeal, [prosecutor] was still functioning as an advocate for the State, and not in an investigatory capacity.").

Additionally, New Jersey recognizes the litigation privilege in § 1983 proceedings, which "generally protects an attorney from civil liability arising from words he has uttered in the course of judicial proceedings." *Loigman v. Twp. Comm. of Twp. of Middletown*, 185 N.J. 566, 579 (2006). "The privilege shields any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action." *Id.* at 585 (internal quotation marks omitted). The privilege does not apply to malicious prosecution claims, *id.* at 584 & n.4, but Plaintiff's claims against Rosenkrans are based on her actions during Plaintiff's PCR proceedings and do not assert that she initiated criminal proceedings against Plaintiff. The Court will dismiss the claims against Rosenkrans with prejudice. 28 U.S.C. § 1915(e)(2)(B)(iii).

### F.     Stephen Pognay

Stephen Pognay "is an Assistant Prosecutor, employed by the Defendant ECPO, as the Custodian of Records. Defendant Pogany has participated in the custom of deliberately withholding exculpatory evidence from Plaintiff denying him an opportunity to prevail on his Brady violation . . . ." SAC ¶ 65. Plaintiff requested documents from the ECPO; Pognay acknowledged receiving Plaintiff's request but "refused to provide the withheld documents,

wantonly participating in the due process violation of concealing Brady materials in order to prevent Plaintiff from proving that his conviction is invalid due to various constitutional violations." *Id.* ¶ 66. "Defendant Pogany chose to deliberately and maliciously participate in the custom of depriving indigent defendants of documented evidence withheld by Defendant ECPO and its employees." *Id.* ¶ 67.

Assuming for screening purposes only that Pogany would not be entitled to absolute prosecutorial immunity, Plaintiff has not alleged an access-to-the-courts claim against him. "To allege an access-to-the-courts claim, a prisoner is required to show that the denial of access caused actual injury. An actual injury occurs when a prisoner demonstrates that a 'nonfrivolous' and 'arguable' claim was lost because of the denial of access to the courts." *Conrad v. De Lasalle*, No. 21-8462, 2021 WL 4593273, at *4 (D.N.J. Oct. 6, 2021) (citing *Christopher v. Harbury*, 536 U.S. 403, 415 (2002); *Lewis v. Casey*, 518 U.S. 343, 350 (1996); *Jackson v. Whalen*, 568 F. App'x 85, 87 (3d Cir. 2014) (per curiam)). "[P]risoners must satisfy certain pleading requirements: The complaint must describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'" *Monroe v. Beard*, 536 F.3d 198, 205-06 (3d Cir. 2008) (quoting *Christopher*, 536 U.S. at 416-17).

Because Plaintiff has not sufficiently described the alleged exculpatory evidence at issue, the Court cannot assess whether Pogany caused an actual injury to Plaintiff by failing to turn over evidence. Also, Plaintiff indicates that the ECPO acknowledged receiving Plaintiff's requests in April 2021. SAC ¶ 66. Plaintiff's § 2254 petition was originally dismissed in August 2019, more than a year prior. *See Georges v. Bartkowski*, No. 10cv6300, D.E. 57. Plaintiff may be able to clarify his claims, so the Court will dismiss this claim without prejudice.

### G. Rick Liss and Christian Porrovecchio

Plaintiff seeks relief from two EJSP law librarians, Rick Liss and Christian Porrovecchio. Plaintiff alleges that Liss, the librarian during Plaintiff's second and third PCR proceedings and habeas proceedings, "deliberately disregarded the standards of an adequate law library leaving it in poor condition." SAC ¶ 72. Plaintiff told Liss "that the disk drives constantly malfunctioned leaving an inability to either store or retrieve prepared documents for submissions to the courts. Defendant Liss intentionally disregarded the updates to the Lexis Nexis that provided new case law releases every quarter." *Id.* ¶ 73. Plaintiff claims that he was unable to present a fundamental fairness argument to the state courts because of the state of the prison law library and "because the computer malfunctioned leaving Plaintiff unable to retrieve the argument to file a reconsideration of the unfair ruling provided by the state courts that would have been properly challenged under the fundamental fairness doctrine because the ruling was oppressive." *Id.* ¶ 75. He alleges that "the information prepared by Plaintiff was destroyed due to the malfunctioning computers Defendant Liss was aware of but did nothing to improve the conditions which deprived Plaintiff an ability to apply for the fundamental fairness doctrine that was stored on his diskette because the computer malfunctioned . . . ." *Id.*

Plaintiff alleges Porrovecchio, the law librarian after Liss, violated Plaintiff's right to access the courts because Porrovecchio did not fix the law library's computer problems. *Id.* ¶¶ 78-81. Plaintiff asserts he lost "crucial legal arguments that were unretrievable due to the constant malfunctional conditions the Defendants failed to improve." *Id.* ¶ 82. Specifically, Plaintiff alleges that he "was unable to retrieve a drafted argument that encapsulated his equitable tolling argument in his response to the State's affirmative defense . . . ." *Id.* ¶ 83. He also alleges Porrovecchio prevented him from arguing his fundamental fairness argument. *Id.* ¶ 85.

"The fundamental fairness doctrine is derived from due-process guarantees embedded in Article I, Paragraph 1 of the New Jersey Constitution." *State v. Hogan*, No. A-4543-19, 2022 WL 1276124, at *7 (App. Div. Apr. 29, 2022) (citing *State v. Melvin*, 248 N.J. 321, 347 (2021), *cert. denied*, 252 N.J. 173 (2022)). New Jersey "has applied the doctrine of fundamental fairness sparingly and only where the interests involved are especially compelling; if a defendant would be subject to oppression, harassment, or egregious deprivation, it is to be applied." *Melvin*, 248 N.J. at 348 (cleaned up). "The 'one common denominator' in [the Court's] fundamental fairness jurisprudence is 'that someone was being subjected to potentially unfair treatment and there was no explicit statutory or constitutional protection to be invoked.'" *State v. Njango*, 247 N.J. 533, 548-49 (2021) (quoting *Doe v. Poritz*, 142 N.J. 1, 109 (1995)). According to the amended complaint, Plaintiff wanted to raise a fundamental fairness argument to the state courts that he should have been allowed to file a new PCR petition after the amendment of N.J. Ct. R. 3:22-12(a). Amen. Compl. ¶ 74. A brief discussion of the rule change is necessary to put Plaintiff's claim in context.

Generally, New Jersey requires a first PCR petition to be filed within 5 years of the entry of the judgment of conviction. N.J. Ct. R. 3:22-12(a). "Prior to 2009, Rule 1:1-2 could be invoked to relax the five-year time limit under Rule 3:22-12(a) (2002), which was then applicable to all non-capital first, second, and subsequent PCR petitions." *State v. Jackson*, 454 N.J. Super. 284, 293 (App. Div. 2018). However, the NJSC amended the court rules to prohibit enlargements of time under Rule 3:22-12 effective September 1, 2009. *Id.*; *see also* N.J. Ct. R. 1:3-4(c) ("Neither the parties nor the court may, however, enlarge the time specified by . . . R. 3:22-12 (petitions for post-conviction relief) . . . ."). "The 'time limitations' in Rule 3:22-12 'hence are not subject to the relaxation provision of Rule 1:1-2.'" *Jackson*, 454 N.J. Super. at 293. Rule 3:22-12 itself was

14

amended effective February 1, 2010 to "add[] a new subparagraph, Rule 3:22-12(a)(2), requiring that 'no second or subsequent petition shall be filed more than one year after' the date one of three claims accrued, as defined in that subparagraph. The Court also added Rule 3:22-4(b), requiring second or successive petitions to be dismissed unless they alleged one of those three claims and were 'timely under R. 3:22-12(a)(2).'" *Id.* "By mandating in Rule 3:22-12(a)(2) that the one-year time limit applied '[n]otwithstanding any other provision of this rule,' the Supreme Court made clear that the late filing of a second or subsequent PCR petition could not be excused in the same manner as the late filing of a first PCR petition." *Id.* (alteration in original).

Plaintiff asserts that it was fundamentally unfair to apply the 2010 amendment to his second and third PCR petitions because his first PCR was denied before the amendment's effective date and the 2010 amendment "foreclosed any possibility of Plaintiff ever filing for a second PCR under R. 3:22-12(a)(2)(C), which was the date of the denial of the first or subsequent application for [PCR] (August 28, 2007) . . . ." SAC ¶¶ 48, 50. He argues now that Liss and Porrovecchio prevented him from making this argument because the law library computer malfunctioned, causing him to lose his prepared materials. He has not stated an access-to-the-courts against Liss and Porrovecchio because the New Jersey Appellate Division has already rejected a similar argument.

The Appellate Division held in *State v. Jackson* that the 2010 amendment applied to a defendant's second PCR petition even though "[a]ll of these rule amendments were adopted after defendant's judgment of conviction, and indeed after his first PCR petition." 454 N.J. Super. at 294. "[A] PCR petition filed after the amendments is governed by the amended versions of Rule 3:22-12 and Rule 1:3-4(c). A procedural rule 'is in general to be deemed applicable to actions pending on its effective date as well as those instituted thereafter.'" *Id.* (quoting *Farrell v. Votator*

15

*Div. of Chemetron Corp.*, 62 N.J. 111, 120 (1973)).  As the Appellate Division rejected an argument very similar to Plaintiff's, it is not plausible that any fundamental fairness argument would have succeeded in state courts.  *See id.* at 296 ("Defendant's claim of injustice is particularly unappealing.").  Therefore, Plaintiff has not alleged an access to the courts claim against Liss and Porrovecchio for causing Plaintiff to lose his fundamental fairness argument.

Plaintiff also has not stated a claim against Porrovecchio for causing the loss of Plaintiff's equitable tolling argument because he has not sufficiently described what equitable tolling argument was lost.  "[T]he complaint should state the underlying claim in accordance with Federal Rule of Civil Procedure 8(a), just as if it were being independently pursued, and a like plain statement should describe any remedy available under the access claim and presently unique to it." *Christopher v. Harbury*, 536 U.S. 403, 417-18 (2002) (footnote omitted).  Plaintiff has not provided the Court with specific facts about his equitable tolling argument, so the Court cannot infer that it was "more than hope."  Accordingly, the Court will dismiss these claims without prejudice.  28 U.S.C. § 1915(e)(2)(B)(ii).

H.   **Supervisor Defendants**

Plaintiff brings claims against several supervisory defendants for failing to correct the deficiencies in the law library:  Director of the Education Department Kristen Difoire; Assistant Superintendent Calvin Spires; Administrator James Slaughter; and Associate Administrator Cindy Sweeney (collectively "Supervisor Defendants").  SAC ¶¶ 89, 92, 94, 96.  Plaintiff alleges Difoire "was aware of the conditions of the law library and refused to intervene to improve the conditions." *Id.* ¶ 89.  Difoire "deliberately reduced Plaintiff's access to the law library deciding to personally scheduled Plaintiff herself.  Denied Plaintiff any out of state cases for persuasive arguments against the rigid 3:22-12(a)(2), amendments that offered no written exceptions, allowing the state courts

16

wide latitude to bar Plaintiff's arguments of exception [sic] circumstances . . . ." *Id.* ¶ 90.  He states Difoire prevented him from advancing his equitable tolling argument. *Id.* ¶ 91. Plaintiff alleges he showed Spires documents "proving that Plaintiff was days away from his deadline to file his motion for reconsideration.  Defendant Spires told Plaintiff that he would make sure he intervened to assure that access would be provided . . . ." *Id.* ¶ 93. Plaintiff asserts Spires did not take any action, causing his motion for reconsideration to be filed late. *Id.* ¶ 93.  He claims both Slaughter and Sweeney were aware of "Plaintiff's problems with access to an adequate law library" but did not take action to improve the library's conditions.

Plaintiff has not adequately pled claims against the Supervisor Defendants.  "In advancing any § 1983 claim against prison officials, a plaintiff may not rely solely on a *respondeat superior* theory of liability.  Rather, a plaintiff must aver facts to show the defendants' personal involvement in the alleged misconduct[, which] requires particular 'allegations of personal direction or of actual knowledge and acquiescence.'" *Dooley v. Wetzel*, 957 F.3d 366, 374 (3d Cir. 2020)  (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988)). "A plaintiff 'must portray specific conduct by state officials which violates some constitutional right.'" *Chavarriaga v. New Jersey Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015) (quoting *Gittlemacker v. Prasse*, 428 F.2d 1, 3 (3d Cir. 1970)).

Plaintiff has not sufficiently alleged that the Supervisor Defendants had actual knowledge of and acquiesced in their subordinates' wrongful conduct because he has not pled an underlying violation of his constitutional rights.  In other words, the SAC does not allege wrongful conduct that the Supervisor Defendants permitted to continue.  He also has not sufficiently alleged that they took any direct actions which caused him to lose a non-frivolous argument.  The claims

against the Supervisor Defendants will therefore be dismissed without prejudice. 28 U.S.C. § 1915(e)(2)(B)(ii).

### I. Leave to Amend

Generally, "plaintiffs who file complaints subject to dismissal under [§ 1915] should receive leave to amend unless amendment would be inequitable or futile." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002). Because Plaintiff may be able to allege facts that would cure the deficiencies identified above, the Court will grant Plaintiff 45 days to submit a proposed third amended complaint ("TAC"). The proposed TAC will be subject to this Court's § 1915 review prior to service. This will be Plaintiff's final opportunity to submit a proposed complaint that can pass the Court's § 1915 review. Failure to submit a proposed TAC within 45 days may result in dismissal with prejudice.

Plaintiff should note that the TAC will supersede the SAC. When the TAC is filed, the SAC is inoperative and cannot be utilized to cure the TAC's defects unless the relevant portion is specifically incorporated. 6 Wright, Miller & Kane, Federal Practice and Procedure 1476 (2d ed. 1990) (footnotes omitted). The TAC may adopt some or all the allegations, but the identification of the particular allegations to be adopted must be clear and explicit. *Id.* To avoid confusion, the safer course is to file a third amended complaint that is complete in and of itself. *Id.* Plaintiff may not include claims that the Court has dismissed with prejudice.

### IV. CONCLUSION

For the reasons above, the Court will dismiss the SAC. The claims against the Office of the Public Defender, New Jersey Department of Corrections, New Jersey Supreme Court, Essex County Prosecutor's Office, Barbara Rosenkrans, Susan Bohrod, and Joan Buckley are **DISMISSED WITH PREJUDICE**, 28 U.S.C. § 1915(e)(2)(B)(ii-)(iii). The claims against Helen

Godby, Stephen Pogany, Rick Liss, Christian Porroveechio, Kristen Difoire, James Slaughter, Calvin Spires, and Cindy Sweeney are **DISMISSED WITHOUT PREJUDICE**, 28 U.S.C. § 1915(e)(2)(B)(ii).  The claims against Thomas McTigue are **DISMISSED WITH PREJUDICE** in part, 28 U.S.C. § 1915(e)(2)(B)(iii), and **DISMISSED WITHOUT PREJUDICE**, 28 U.S.C. § 1915(e)(2)(B)(ii), in part.  Plaintiff may submit a proposed third amended complaint within **45 days**.

      An appropriate Order accompanies this Opinion.

7/6/2023
Date

Evelyn Padin, U.S.D.J.